UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTONIO JONES,
    Petitioner,

 -vs-            No. 06-CV-0675(VEB)
                 **DECISION AND ORDER**
DALE ARTUS,
    Respondent.
_____

**I. Introduction**

*Pro se* petitioner Antonio Jones ("Jones" or "petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction following a jury trial in Erie County Court on two counts of murder in the second degree (intentional and felony), two counts of burglary in the first degree, one count of criminal possession of a weapon in the second degree and one count of criminal possession of a weapon in the fourth degree. Jones was sentenced on May 31, 1996, to an aggregate prison term of forty-two and one-half years to life in prison and is currently incarcerated. The parties have consented to final disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

**II. Timeliness of the Petition**

In opposition to the petition, respondent has asserted the defense that of untimeliness. Notwithstanding one error in respondent's calculations, it does appear that Jones' petition is untimely, as discussed further below.

Pursuant to 28 U.S.C. § 2244(d)(1), a one-year period of limitations applies to an application for a writ of habeas corpus. For most petitioners, including Jones, this period runs from the date on which the judgment of conviction became final. 28 U.S.C. § 2244(d)(1)(A).

Here, the parties do not dispute that Jones' conviction became final on June 18, 2004. *See Williams v Artuz*, 237 F.3d 147, 151 (2d Cir. 2001), *cert. denied*, 534 U.S. 924 (2001). Absent any statutory tolling for collateral state-court applications for post-conviction review, *see* 28 U.S.C. § 2244(d)(2), *Pratt v. Greiner*, 306 F.3d 1190, 1191 (2d Cir. 2002), the one-year statute of limitations therefore would have expired on June 18, 2005.

Here, the limitations period ran from June 18, 2004, until March 2, 2005 (i.e., 257 days), when Jones filed a petition for a writ of error *coram nobis* with the Appellate Division. Respondent argues that the petition ceased to be "pending" within the meaning of 28 U.S.C. § 2244(d)(2), after the Appellate Division denied *coram nobis* relief on May 26, 2005. Respondent is incorrect. Previously that had been true, but the law in New York changed in 2002 to allow defendants discretionary appeals from orders of the Appellate Division deny *coram nobis* relief based on requests for ineffective assistance of appellate counsel. *See People v. Stultz*, 2 N.Y.3d 277, 281, 778 N.Y.S.2d 431, 810 N.E.2d 883 (2004); 2002 N.Y. Laws ch. 498, § 1 (effective Nov. 1, 2002), codified at N.Y. CRIM. PROC. LAW § 450 .90(1) (providing for appeals from "an order granting or denying a motion to set aside an order of an intermediate appellate court on the ground of ineffective assistance or wrongful deprivation of appellate counsel"). See N .Y.Crim. Proc. Law § 450.90(1). This change in the law clearly was applicable to Jones; his filing of the *coram nobis* petition itself post-dated the change in the law by nearly three years. *See Castro v. Fisher*, No. 04 Civ.346 DLC, 2004 WL 2525876, at *8 (S.D.N.Y. Nov. 8, 2004). Indeed, his *coram nobis* application would not have been fully exhausted had he not sought leave to appeal from the New York Court of Appeals. *See id.*

Jones' limitations period ran again from September 28, 2005, until October 17, 2005 (i.e.,

19 days), when Jones filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10, in the court of conviction. This was denied by the trial judge, and the Appellate Division denied leave to appeal on April 24, 2006. That motion ceased to be pending when the Appellate Division denied leave to appeal, as New York does not provide for a further appeal from such an order. *See* N.Y. CRIM. PROC. LAW § 450.90(1). By this time, 276 (257 + 19) days had run against the one-year limitations period.

The clock commenced running again on April 24, 2006, and ran until September 27, 2006, the date on which Jones signed the petition and handed it over to prison officials for mailing, and the date the petition is deemed have been filed with the Court under the prisoner mailbox rule. Thus, an additional 156 days elapsed between the time his last properly-filed state-court application ceased to be "pending" and the filing of Jones' federal habeas petition. This time must be counted against the one-year period, making a total of 432 (257 + 19 + 156) days chargeable against Jones. Thus, after deducting statutory tolling, petitioner filed the instant petition 432 days after his conviction became final, or 77 days beyond the end of the one-year limitations period.

### III.  Equitable Tolling

In his reply papers filed after respondent raised the defense of untimeliness, Jones conceded that his petition was untimely. However, he argues that he is entitled to equitable tolling of the statute of limitations because he was denied access to his legal materials by prison officials. *See* Petitioner's Reply Memorandum of Law ("Pet'r Reply Mem.") (Docket No. 16).

The Second Circuit has held that equitable tolling is permissible under the 1996 amendments to the federal habeas statute, s*ee Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

To meet this burden, a petitioner must establish that (1) "he acted with reasonable diligence during the period he wishes to have tolled," *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir.2001) (quoting Smith, 208 F.3d at 17); (2) "extraordinary circumstances" prevented him from making a timely petition, *Smith*, 208 F.3d at 17; and (3) those extraordinary circumstances actually caused defendant's untimeliness. In other words, the petitioner must demonstrate that there is "a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (internal citations omitted); *see also Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) ("In a case where the alleged extraordinary circumstances ceased early in the limitations period, we inquire whether petitioner diligently pursued his application in the remaining time."). The habeas petitioner appropriately bears the burden of establishing that tolling is appropriate. *Hizbullahankhamon*, 255 F.3d at 75.

Here, Jones has attempted to demonstrate entitlement to equitable tolling for the period of time that elapsed between the resolution of his C.P.L. § 440.10 motion on April 24, 2006, and the filing of his federal habeas petition on September 27, 2006. Jones asserts that prison officials' "destruction of legal documents and hindering petitioner from access to the courts, prohibited petitioner from properly filing his instant habeas corpus petition" "constituted extraordinary circumstances warranting equitable tolling[.]" Petitioner's Reply Memorandum of Law ("Pet'r Reply") at 5 (Docket No. 16). Based on Jones' submissions, it appears that his legal documents were confiscated when he was placed in a Special Housing Unit ("SHU") on April 30

2006. Jones states that "on April 30, 2006, Corrections Officer Poley searched petitioner's cell while he was housed in B-Block. After conducting his search of the complete cell area, he allegedly [sic] removed all petitioner's property from B-Block to a Special Housing Unit (see, PETITIONER'S EXHIBIT "B")." Pet'r Reply at 6 (Docket No. 16). Petitioner's Exhibit B is a form titled "Office of the Deputy Superintendent." In the space underneath the printed text, "This cell [i.e., cell B-26] was searched and the following contraband was confiscated," CO Poley wrote, "NCF/NDD." Petitioner's Ex. B (Docket No. 16). Under the "REMARKS" section of the form, CO Poley wrote, "Property taken from cell Moved to SHU[.]" *Id.* (Docket No. 16). There is no indication as to what the abbreviation "NCF/NDD" means, but the Court will assume that it refers to "all petitioner's property," including his legal papers.

Pursuant to the Rules of the New York State Department of Correctional Services, "[i]nmates [in solitary confinement or "SHU"] may be deprived of law library services by issuance of a deprivation order . . . . " N.Y. COMP. CODES R. & REGS. tit. 7, § 304.7(g) (2000); *see also id.* § 305.2(a) ("An order depriving an inmate [in solitary confinement] of a specific item, privilege or service may be issued when it is determined that a threat to the safety or security of staff, inmates, or State property exists."). The Second Circuit has not decided whether "the deprivation of petitioner's legal materials and his access to law library materials could constitute an extraordinary circumstance warranting equitable tolling of the one-year limitations period[.]" *Hizbullahankamon v. Walker*, 255 F.3d at 75 (declining to decide the question; the panel substantially agreed with district court's second ground for refusing to invoke equitable tolling, namely, that petitioner did not exercise reasonable diligence during the relevant time period; petitioner failed to show a causal connection between his confinement in SHU and his

filing of a late habeas petition).

Even assuming that Jones could show that his confinement in SHU and confiscation of his legal papers constituted "extraordinary circumstances" and prevented him "from filing his petition for *some* length of time, [the court] must still determine whether they 'prevented him from filing his petition *on* time.'" *Valverde v. Stinson*, 224 F.3d at 134 (quoting *Smith v. McGinnis*, 208 F.3d at 17 (emphasis added in *Valverde*). "The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde*, 224 F.3d at 134 (citations omitted); *see also id.* (explaining that "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing"). "'[T]he party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll,'" *Smith*, 208 F.3d at 17, and "reasonable diligence is also required throughout the remainder of the period between the confiscation and the filing[,]" *Valverde*, 224 F.3d at 134 n.5.

Jones indicates that he was on "keeplock" status in SHU for 75 days, *see* Pet'r Reply at 7 (Docket No. 16). Based on the documentation Jones has submitted (i.e., Petitioner's Exhibits), his SHU confinement lasted from April 30, 2006, until July 14, 2006 (75 days). Jones claims that he "was not able to have access to his property nor was he able to retrieve his legal materials," Pet'r Mem. at 6 (Docket No. 16), while he was in SHU beginning in April 2006, it nevertheless

appears from the documentation he has submitted that on June 10, 2006, before he was released from SHU, he had access to some of his legal materials. In particular, petitioner states that "[t]hereafter, on June 10, 2006, while petitioner was housed in E-Block, his cell was searched by Corrections Officer Mahuta he removed two folders (one allegedly containing unauthorized materials and the other containing legal work)." Pet'r Reply Mem. at 6 (Docket No. 16); *see also* Office of Deputy Superintendent Form dated June 10, 2006, Petitioner's Ex. C (Docket No. 16). Petitioner states that this folder of "legal work" was not returned to him until September 22, 2006, and he has submitted a form (Petitioner's Ex. C, Docket No. 16), completed by CO Mahuta regarding the search of Jones' cell on E-Block that occurred on June 10, 2006. This form indicates that Jones signed for receipt of a "Brown Folder and Legal Paperwork" on September 22, 2006. *See* Petitioner's Ex. C (Docket No. 16).

Jones claims that on September 22, 2006, when the materials referenced in Petitioner's Ex. C (Docket No. 16) were returned to him by CO Mahuta, he "realized that his hand written federal habeas corpus petition and other documents had been either intentionally destroyed or removed from the brown folder." Pet'r Mem. at 6-7 (Docket No. 16). Jones does not indicate what the "other documents" were. *See id.* Although Jones claims that on September 22, 2006, he discovered that his federal habeas petition had been "destroyed," he nevertheless asserts that six days later, on September 28, 2006, his federal habeas petition, appellate briefs, and trial transcripts, sustained water damage in his prison cell due to a firehose being operated by a private contractor doing work at the correctional facility. *See* Inmate Claim Form, Petitioner's Ex. E (Docket No. 16).

Jones alleges in the Inmate Claim Form that on September 28, 2006, one day *after* he

signed and filed his federal habeas petition, his cell was sprayed by a "fire holes [sic] hanging down from 3-company going down to one company where construction work is being done," and "out of nowhere [his] cell was sprayed with water causing water damage to [his] radio and legal transcripts." Inmate Claim Form, Petitioner's Ex. E (Docket No. 16). In addition to the radio cassette player, Jones listed the following items on the claim form's evaluation schedule: "Appeal Brief (2) of them"; "Appeal Brief Reply (1)"; "DD'5 Reports"; "Federal Habeas Corpus Petition"; and "300 pages of Trial Transcripts". *Id.* He indicated the age of the transcripts and briefs at "1 year" and the habeas petition at "2 months". *Id.* Taking Jones' representations as true, he had begun preparing his federal habeas petition two months before the firehose incident.

After reviewing all of the documentation offered by Jones, there are a number of incongruities in his submissions and his chronology of events that prevent the Court from finding that Jones has met his burden of demonstrating the required causal connection between the alleged extraordinary circumstances and the lateness of his habeas petition. In this case, based upon Jones' representations and the documentation he has submitted, his SHU confinement ended July 14, 2006. Seventy-five (75) days (or 2 months and 13 days) passed before he filed his federal habeas petition on September 27, 2006. He appears to be claiming that he was deprived of his legal materials even after he was released from SHU, but his submissions do not bear this out. On the one hand, he claims that his federal habeas petition was in the folders that were seized by CO Mahuta on June 10, 2006, and that he discovered that it had been "destroyed" on September 22, 2006, when the folders were returned to him. Six days later, however, Jones claims that his federal habeas petition was one of the items in his cell which sustained water damage on September 28, 2006, in the fire hose incident. Curiously, that incident occurred one

day *after* Jones signed and dated his federal habeas petition. (Docket No. 1).At the same time, other documentation submitted by Jones indicates that on September 28, 2006, the day *after* he signed and dated the federal habeas petition received by this Court, he is claiming that his habeas petition nevertheless was located in his cell and sustained water damage from the firehose. Furthermore, the fact that the "legal work" that he had left in the correctional facility's law library was not returned to him until February 21, 2007, apparently had no bearing on his ability to file his federal habeas petition, since he had already filed the petition five months earlier, on September 27, 2006.

"[E]ven assuming that the alleged deprivation of access to his legal materials and the law library constituted an "extraordinary circumstance" warranting equitable tolling, petitioner cannot show that this extraordinary circumstance prevented him from filing a timely habeas petition." *Hizbullahankamon*, 255 F.3d at 76. Stated another way, based on the record presented, the Court cannot find that Jones has met his burden of showing that "but for," *id.*, any of the events he details in his Reply Memorandum of Law (Docket No. 16) and the attached Exhibits, he would have been able to file his petition within the one-year limitations period, *id.* (citing *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (denying equitable tolling based on lack of diligence where petitioner had been denied access to legal materials for approximately six months but had regained access to legal materials six months prior to expiration of the limitations period), *cert. denied*, 532 U.S. 963 (2001)). Accordingly, on the facts presented here, I do not find that Jones is entitled to equitable tolling.

In any event, even if the petition were timely or Jones were entitled to have the statute of limitations equitably tolled, a writ of habeas would not be warranted. As discussed below, under

any standard of review, Jones' claims do not merit habeas relief.

IV. **Merits of the Petition**

In his Petition (Docket No. 1), Jones asserts that "the jury's verdict was contrary to the weight of the evidence" ("Ground One"); the trial court "defendant of his right to counsel when it granted the People's motion to disqualify defendant's retained counsel" ("Ground Two"); the trial "court's comments at sentencing showed that the court had prejudged defendant and was biased against him" ("Point III"); "the consecutive sentences on counts one and two and six of the indictment should be modified to concurrent in the interest of justice" ("Ground Four"/"Point V"); and "the sentencing proceed [sic] did not satisfy the requirements of due process" ("Ground Five"/"Point IV"). *See* Petition (Docket No. 1). "Ground Five"/"Point IV" essentially restates "Point III" regarding the trial judges allegedly improper comments at sentencing. As discussed below, all of the claims raised in the Petition (Docket No. 1) are either not cognizable on federal habeas review, or are without merit.

In his Reply Memorandum of Law (Docket No. 16), Jones presented arguments in response to the defense of untimeliness argued by respondent in his opposing memorandum of law. He Jones also asserted a new ground for habeas relief, not raised in the original petition (Docket No. 1).[1] However, Jones did not seek permission from the Court to add new claims in his Reply Memorandum of Law. Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts provides, in part, that "[t]he petition must . . . specify all grounds for relief available to the petitioner." Rule 2(c)(1) of the Rules Governing Section 2254 Cases in

---

[1] Jones claims that the prosecution failed to turn over the forensic testing regarding the items of clothing worn on the night of the stabbing which "positively show petitioner 'was not wearing bloody clothing', as theorized by the prosecutor at all phases of the prosecution of petitioner, and as testified to by State witnesses." Pet'r Reply Mem. at 18 (Docket No. 16) (emphasis in original).

the United States District Courts. "In light of this Rule, it has been recognized that a traverse is not the proper pleading in which to raise additional grounds for habeas relief." *Parker v. Duncan*, No. 03-CV-0759 (LEK/RFT), 2007 WL 2071745, at *6 (N.D.N.Y. July 17, 2007) (citing *Haupt v. Moore*, No. 03 CV 1438MLM, 2005 WL 1518265, at *2 n. 3 (E.D. Mo. June 24, 2005) (quoting *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994)). District courts have held that habeas claims raised for the first time in a reply memorandum or traverse are not properly considered. *Parker*, 2007 WL 2011745, at *6 (citing *Haupt*, 2005 WL 1518265, at *2 n. 3; *Simpson v. United States*, No. 5:03-CV-691, 2005 WL 3159657 (N.D.N.Y. Nov. 25, 2005) (declining to consider habeas claims "raised for the first time in [Petitioner's] Traverse").

### A.  Weight of the Evidence

Jones contends that "the jury failed to give proper weight to the testimony of Gordon Miller, simply put defendant could not have been convicted on any of the counts of the indictment if Gordon Miller's testimony was properly evaluated." Petition at 6 (Docket No. 1). This claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y.CRIM. PROC. LAW § 470.15(5). Thus, a "weight of the evidence" argument presents only a state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. *People v. Bleakley*, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987). Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in

violation of "the Constitution or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding. *Ex parte Craig*, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence ..."), *aff'd,* 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923); *Garrett v. Perlman*, 438 F.Supp.2d 467, 470 (S.D.N.Y.2006) (same); *Garbez v. Greiner*, No. 01 Civ.9865(LAK)(GWG), 2002 WL 1760960, at *8 ("[B]y raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner] raises an error of state law, which is not available for habeas corpus review."); *Lemons v. Parrott*, 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) ("[W]e have no authority to review a weight of the evidence argument because it is a state law claim.").

Even if the Court were to construe Jones' claim as asserting that his conviction was based upon insufficient evidence, habeas relief would not issue. The sole basis upon which Jones attacks the legal sufficiency of the prosecution's proof is that he believes that defense witness Miller was more credible than the prosecution witnesses, who inculpated him. "[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal[.]" *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.1996). On habeas review, the court must defer to the jury's assessments of both of these issues. *Id.*

For the foregoing reasons, any challenge Jones makes to the sufficiency and weight of the

evidence supporting his conviction must be dismissed.

B.     **Denial of Petitioner's Right to Counsel of His Choosing**

Jones contends that the trial court erroneously granted the prosecution's motion to disqualify his first trial attorney on the basis of a conflict of interest. On direct appeal, the Appellate Division rejected this claim as follows:

> Contrary to the further contention of defendant, [the trial] [c]ourt did not deprive him of his right to counsel when it assigned him new counsel pursuant to a motion by the People to disqualify an attorney who was present at an earlier appearance before the court. Although it is questionable whether defendant had actually retained that attorney, we nevertheless address the merits of defendant's contention. The attorney admitted that he had a conflict of interest because he also represented a person against whom defendant had given a statement in an unrelated homicide. Although a defendant has the right to counsel of his choice, that right is not absolute, (*see generally Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140), and here the attorney could not represent both defendant and another criminal defendant against whom defendant was a potential prosecution witness[.].

*People v. Jones*, 2 A.D.3d 1397, 1399, 768 N.Y.S.2d 881, 882 (App. Div. 4th Dept. 2003) (internal quotations and some internal citations omitted).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. As the Appellate Division correctly held, "the right to choose one's own counsel is not absolute." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir.2004) (citing *Wheat v. United States*, 486 U.S. at 159 (1988); *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir.1993)). Rather, "[t]he Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing." *Id.* (citing *Wheat*, 486 U.S. at 159; *Locascio*, 6 F.3d at 931). Because a defendant's right to counsel of his or her choice is "not absolute," a trial court "may require" a defendant to proceed to trial with counsel not of

defendant's choosing, although it "may not compel" defendant to proceed with an attorney who is "incompetent." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir.1997). Thus, the law is clear that as a matter of both federal and state constitutional law, Jones was not entitled to appointed counsel of his own choosing. Furthermore, the Supreme Court has held that, where a defendant's attorney was actively representing conflicting interests, that defendant's assistance of counsel as guaranteed by the Sixth Amendment was either denied entirely or denied during a critical stage of the proceeding, necessitating reversal of the conviction. *E.g.*, *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (citations omitted). Thus, the trial court was correct in inquiring into the conflict of interest between Jones and his first attorney, and electing to substitute counsel known to be conflict-free to represent Jones at trial. *See id.* Accordingly, Ground Two does not provide a basis for habeas relief.

## C. Consecutive Sentences

Jones contends that the consecutive sentences he received on counts, two and six of the indictment "should be modified to concurrent in the interests of justice" and "submits that the trial court's imposition of consecutive sentences was an abuse of discretion." Petition at "Point V" at pp. 34-35 (Docket No. 1) (citing N.Y. Crim. Proc. Law § 470.15(6)(b)). Jones further "contends that the consecutive sentences were, though legal (*see*, [N.Y.] Penal Law § 70.25), unduly harsh or severe . . . ." *Id.* at pp. 34-35 (Docket No. 1) (citations omitted).

The assertion that a sentencing judge abused his or her discretion in sentencing is ordinarily not a cognizable federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir.1977) (holding that petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding

psychiatric reports) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")). A challenge to the term of a sentence is not a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992). Here, petitioner concedes that the imposition of consecutive sentences was entirely proper as a matter of New York state law. Stated another way, there is no allegation that the trial court sentences petitioner to a term of imprisonment outside of the statutory range. Ground Three accordingly is dismissed.

### D. Claims Relating to the Sentencing Proceeding

Jones contends that his sentencing was constitutionally marred by (1) the prosecutor's reference to previous a homicide charge of which Jones had been acquitted; (2) the trial court's statement, "'you were guilty in my eyes on the trial of [co-defendant] Tall Tony'", and (3) the trial court's statement, "'what you did is the action of the devil'". Petition, "Point IV", pp. 33 (Docket No. 1); *see also* Petition, "Ground Three", at p. 9 (Docket No. 1) (citations to record omitted). On direct appeal, the Appellate Division held that because Jones failed to object to comments of the prosecutor and the trial court made at sentencing, he failed to preserve for review his contentions that the comments were improper.

As to the prosecutor's comment, the trial judge obviously was aware, through other means, of Jones' entire criminal history, including offenses for which he had been arrested but not convicted. Although the trial judge had presided over Jones' co-defendant's trial, he was not constitutional required to recuse himself from presiding at Jones' trial. *See McMahon v. Hodges*,

382 F.3d 284, 290 (2d Cir.2004) (denying habeas relief where state trial judge who had presided over petitioner's co-defendant's trial correctly decided not to recuse himself from petitioner's trial even though "the trial judge had undoubtedly formed opinions about [petitioner's] likely guilt during the course of [co-defendant's] trial at which the judge presided.") (citing *Liteky v. United States*, 510 U.S. 540 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.") (internal quotation marks omitted).

I note that there is no allegation that the trial judge displayed any favoritism or bias during any of the pre-trial proceedings or the trial itself. Jones is essentially arguing that these comments evidenced an abuse of discretion in sentencing, which, as noted above, does not present a cognizable claim for habeas relief where, as here, the sentence is legal. *See Fielding v. LeFevre*, 548 F.2d at 1109 (citation omitted). Habeas relief therefore is not warranted on Jones' claim regarding the allegedly improper comments by the judge at sentencing. *See Eady v. Bennett*, No. 99-CV-0157A(Sc), 2003 WL 23610574, at *11 (W.D.N.Y. Nov. 12, 2003) (adopting report and recommendation) (holding that the judge's reference to petitioner "as 'dumb' and 'stupid' during the sentencing proceedings [was] not evidence of a constitutional violation"; the judge's "comments were not evidence of a bias which prejudiced Petitioner's sentencing because the sentences issued by . . . were not excessive" in that they were "within the range prescribed by state law") (citing *Liteky v. United States*, 510 U.S. at 555; *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)). Accordingly, the claims raised in Grounds Four and Five

are dismissed.

## V.	Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus filed by Antonio Jones is dismissed as untimely. In the alternative, the petition is dismissed because none of the claims raised therein warrant habeas relief. Because Jones has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:	May 18, 2009
	Buffalo, New York.